UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

MANUEL MIJARES, MARIAN GODOY,
JOANDERSON BENCOMO, ANOAS
DIONICIO, on behalf of themselves and on
behalf of all others similarly situated,

        Plaintiffs,

v.                                   Case No.: 6:18-cv-2024-Orl-37TBS

THE SERVICE COMPANIES, INC.,

        Defendant.

_____/

## DEFENDANT'S RESPONSE IN OPPOSITION
## TO PLAINTIFFS' MOTION FOR CONDITIONAL CERTIFICATION

Defendant, The Service Companies, Inc. ("TSC"), by and through its undersigned counsel, hereby files its Response in Opposition to Plaintiffs' Motion for Conditional Certification and Court-Authorized Notice Pursuant to 29 U.S.C. § 216(b) ("Plaintiffs' Motion") (ECF NO. 17), showing this Court as follows:

## INTRODUCTION

Plaintiffs filed a purported "collective action" complaint against TSC on behalf of themselves and other alleged similarly situated individuals for alleged unpaid overtime compensation pursuant to the Fair Labor Standards Act, 29 U.S.C. § 216(b) (the "FLSA"). (ECF No. 1-2.) In their unverified Complaint, Plaintiffs allege that TSC "failed to compensate Plaintiffs and the Class for all of the overtime hours that Plaintiff[s] and the Class worked." (ECF No. 1 at 7.) Plaintiffs also allege that TSC failed to compensate them for off-the-clock work. (*See generally* ECF Nos. 23, 25, 27, and 28.)

Plaintiffs seek to represent and send notice to an enormous and unmanageable nation-wide class of all TSC employees who were employed as "house cleaners" during the preceding three years and worked more than forty (40) hours in a work week without being paid proper overtime compensation. (ECF No. 17 at 2.)  As explained more fully below, Plaintiffs' Motion, however, fails for the following reasons and must be denied:

- Plaintiffs fail to demonstrate that they are similarly situated to the putative class because the record evidence demonstrates the complete absence of an uniform policy or practice that violated Plaintiffs' or any TSC employees' rights under the FLSA.

- Plaintiffs fail to demonstrate that a sufficient number of potential class members desire to participate in this litigation.

- Plaintiffs fail to demonstrate that they are similarly situated to the class of individuals whom they seek to represent.

## FACTUAL BACKGROUND

### A.    Overview of TSC's Operations

TSC is a company that provides outsourced services and personnel to hospitality industry clients.  (*See* Declaration of Kurt Wong ("Wong Decl.") ¶ 4 Mar. 20, 2019), a true and correct copy of which is attached hereto as Exhibit "A".)  TSC contracts with its clients – existing hospitality properties – to provide a wide range of food & beverage and hospitality staffing, specialty, and engineering services. (*Id.*)  Its clientele includes hotels, timeshare properties, and casinos.  (*Id.*)  The services TSC provides are governed by the separate contracts between TSC and its clients. (*Id.*)

TSC provides hospitality services, including guest room attendants ("GRAs"), to the Grove Resort and Spa (the "Grove") which is located at 14501 Grove Resort Avenue, Orlando, Florida

34787.  (*Id.* ¶ 5.)  TSC began providing hospitality staffing services to the Grove in December 2016, prior to its opening.  (*Id.* ¶ 8.)   During this time period, GRAs were paid on an hourly basis, and GRAs received overtime for hours worked in excess of forty per workweek.  (*Id.*) Beginning in March 2017, the property opened in three different phases, starting with only 184 one, two and three-bedroom units.  (*Id.*) The property currently has 582 total units.  (*Id.*)  TSC's role at the Grove included providing housekeeping (cleaning) services for the hotel rooms, and also maintaining the public areas, including the guest common areas at the property.  (*Id.*)

TSC's GRA compensation decisions are client-specific and differ from property to property. (*Id.* ¶ 9.)  The factors relevant to TSC's compensation decisions are as follows: (1) the competitiveness of the market in which the property resides; (2) the unit size (dimensions); (3) the number and bedrooms and bathrooms per unit; (4) the structure of the building, specifically whether it is built horizontally or vertically; and (5) the client's cleaning standard for its respective account and property.  (*Id.*)  Importantly, every property is different and every client has different cleaning standards.  (*Id.*)  TSC also compensates its GRAs according to their job duties and level of experience.  (*Id.*)

From December 2016 to March 2017, TSC paid its GRAs on an hourly basis.  (*Id.* ¶ 10.) Hours were tracked in a payroll software program and overtime was calculated and paid for all hours worked over 40 in a work week.  (*Id.*)   However, in March 2017, when the property opened, TSC local management at the Grove made the decision to convert first shift GRAs from hourly pay to piece pay in which TSC paid its GRAs a predetermined amount for the completion of room assignments (second shift GRAs remained hourly).   (*Id.* ¶ 11.)  This is commonly referred to as a "piece rate" which is a per unit rate for each completed room, regardless of the amount of time it took to clean the unit.  (*Id.*)  The reasons for this decision were twofold: (a) TSC wanted to increase

GRAs' compensation to help with recruiting; and (b) improve the efficiency and productivity of its housekeeping staff. (*Id.*) TSC determined that the piece rate system would incentivize GRAs to clean rooms faster and work more efficiently to earn more money. (*Id.*) Also, the piece pay rate allowed to TSC recruit GRAs more competitively in the crowded Orlando market. (*Id.*)

The Grove's piece rate amounts were as follows:  approximately $18 per 2bedroom/2bathroom cleaned, approximately $22 per 3bedroom/2bathroom cleaned, and approximately $24 per 3bedroom/3bathroom cleaned. (*Id.* ¶ 12.) To compute the piece rate compensation, TSC determined the number of rooms cleaned by each GRA and then multiplied the total number of completed units by the applicable piece rate. (*Id.*) The piece rate calculations varied day by day based on the number of units completed by the GRA. (*Id.*)

In or around May 2018, the Grove's local management, in consultation with a consulting company, decided to reduce its housekeeping costs, by discontinuing daily room cleanings and changing to a timeshare model. (*Id.* ¶ 13.) In turn, the Grove's local management instructed TSC to reduce the costs of housekeeping services and eliminate daily cleaning services. (*Id.*) As a consequence of the reduction, the amounts paid to TSC per unit were reduced to an amount lower than the per room rate that TSC was paying to GRAs. (*Id.*) Effective August 5, 2018, TSC returned GRAs to an hourly pay system, compensating them at a rate of $10 to $11 per hour. (*Id.*) GRAs recorded their time in a timekeeping system; they clocked in at the start of their shift and clocked out at the end of the work day. (*Id.*) In sum, the Grove's piece rate system was only in place between March 2017 and August 2018 and only applied to GRAs who worked the first shift. (*See id*. ¶¶ 11, 13.)

### B.      The Named Plaintiffs

All of the named Plaintiffs in this action worked for TSC at the Grove.  (*See* Declaration of Amanda Pascoe ("Pascoe Decl.") ¶ 6 Mar. 20, 2019), a true and correct copy of which is attached hereto as Exhibit "B".); *see also* (Wong Decl. ¶ 6.)   At the Grove, TSC compensated its GRAs according to their job duties, scheduled shifts, and level of experience.  (Pascoe Decl.  ¶ 7.)  For example, GRAs who generally started their shift at 8 a.m., 9 a.m., and 10 a.m. were paid under the piece rate system.  (*Id.*)  This was commonly referred to as the "first shift."  (*Id.*)  On the first shift, GRAs were scheduled and staffed to clean every room and they received predetermined cleaning assignments.  (*Id.*)  First shift GRAs were responsible for making beds, changing linens, cleaning toilets, bathtubs, mirrors, floors, and sinks, and ultimately ensuring that all rooms were cleaned to required quality standards.  (*Id.*)  Conversely, GRAs who generally started their shift after 3 p.m. were paid hourly.  (*Id.*)  This was commonly referred to as the "second shift."  (*Id.*)  On the second shift, GRAs did not receive pre-determined cleaning assignments but instead they received their cleaning assignments throughout their shift.  (*Id.*)   Second shift GRAs were responsible for completing the same tasks as the first shift GRAs, as well as, completing housemen's work, which included picking up dirty linen and trash from housekeeping closets, responding to guest calls, and completing other "projects" that TSC assigned.  (*Id.*)

Plaintiff Manual Mijares ("Mijares") was employed as a GRA from December 2017 until August 2018 when he voluntarily resigned from his employment with TSC.  (Pascoe Decl. ¶ 9.)  He worked on both the first and second shifts.  (*Id.*)  When Mijares worked on the first shift, he was compensated on a piece rate basis. (*Id.*)  He also worked on the second shift when there was a need for additional GRAs to provide housekeeping services.  (*Id.*)  On the second shift, he received hourly pay; his hourly rate was $10.00 per hour.  (*Id.*)

Plaintiff Mariana Godoy ("Godoy") was employed as a GRA from February 2018 until August 2018 when she voluntarily resigned from her employment with TSC. (*Id*. ¶ 10.) Godoy generally worked on the first shift. (*Id*.) In connection with her job duties on the first shift, Godoy was compensated on a piece rate basis. (*Id*.) Godoy also worked on the second shift on a few occasions. (*Id*.) When Godoy worked on the second shift, she was paid on an hourly basis; her hourly rate was $10.00 per hour. (*Id*.) Similarly, Plaintiff Joanderson Bencomo ("Bencomo") was employed as a GRA from November 2017 until August 2018 when he voluntarily resigned from his employment with TSC. (*Id*. ¶ 11.) Bencomo only worked on the first shift and he was compensated on a piece rate basis. (*Id*.) He received hourly pay on a few occasions when he provided deep cleaning services or completed trainings. His hourly rate was $11.00 per hour. (*Id*.)

Finally, Plaintiff Anoas Dionicio ("Dionicio") was employed as a GRA from October 2017 until August 2018 when she voluntarily resigned from her employment with TSC. (*Id*. ¶ 12.) Dionicio generally worked on the first shift. (*Id*.) In connection with her job duties on the first shift, Dionicio was compensated on a piece rate basis. (*Id*.) Dionicio also worked on the second shift on a few occasions. (*Id*.) When Dionicio worked on the second shift, she was paid on an hourly basis; her hourly rate was $10.00 per hour. (*Id*.)

As explained above, in May 2018, the Grove's management (not TSC) decided to reduce the cost of TSC's housekeeping services. (*Id.* ¶ 13; Wong. Decl. ¶ 13.) In particular, the Grove's management instructed TSC to reduce the frequency and costs of its cleaning services and require that GRAs perform cleanings every other day or less, opposed to daily. (Pascoe Decl. ¶ 13; Wong. Decl. ¶ 13.) The Grove's management also reduced the amounts paid to TSC per unit, which ultimately resulted in a reduction of the corresponding piece rates paid to GRAs. (Pascoe Decl. ¶ 13; Wong. Decl. ¶ 13.) The GRAs at the Grove opposed the reduced piece rates and, in turn, TSC

decided that returning to an hourly pay structure was a compromised solution to allay GRAs' concerns and mitigate economic losses. (Pascoe Decl. ¶ 13.)

On August 5, 2018, TSC returned the first shift GRAs to an hourly pay system, compensating them at a rate of $10 to $11 per hour. (*Id.* ¶ 14.) Immediately following the transition from piece rate back to hourly pay, TSC's management held a pre-shift meeting to inform its employees of this change. (*Id.*) GRAs again voiced their opposition to this change and about fifteen to twenty GRAs walked off the job on the spot. (*Id.*) Plaintiffs Mijares, Bencomo, and Dionicio were included in this group. Prior to leaving, Mijares and the others vehemently expressed their dissatisfaction with the new compensation arrangement. (*Id.*) Mijares went so far as to call police to come to the Grove and he eventually had to be escorted from the property. (*Id.*) Mijares, Bencomo, and Dionicio never returned to work at the Grove after they walked off the job. (*Id.*) As with the other named Plaintiffs, Godoy resigned from her employment with TSC immediately following the change in compensation structure at the Grove. (*Id.* ¶ 15.) None of the Plaintiffs continued to work at the Grove after August 5, 2018. (*Id.* ¶ 16.)

## MEMORANDUM OF LAW

The FLSA permits employees to bring an action against their employer for violations of the FLSA on behalf of themselves and "other employees similarly situated." 29 U.S.C. § 216(b). Courts often use a two-tiered approach to assess whether plaintiffs are similarly situated for the purpose of certifying a FLSA opt-in class. Under this approach, early in the litigation, or at the "notice stage," the district court evaluates the case to determine whether the putative plaintiffs are similarly situated. *See Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1217-18 (11th Cir. 2001). "At the notice stage, the district court makes a decision – usually based only on the pleadings and any affidavits which have been submitted – whether notice of the action should be given to

potential class members." *Id.* at 1218.  In making that determination, the court must analyze whether (1) there are other employees who desire to opt in to the action, and whether (2) the employees who desire to opt in are similarly situated.  *Gutescu v. Carey Int'l, Inc.*, 2003 WL 25586749, at *4 (S.D. Fla. July 21, 2003).

"[P]laintiffs must make some rudimentary showing of commonality between the basis for [their] claims and that of the potential claims of the proposed class, beyond mere facts of job duties and pay provisions.'"  *Holt v. Rite Aid Corp.*, 333 F. Supp. 2d 1265, 1270 (M.D. Ala. 2004).  In other words, plaintiffs must "demonstrate some reasonable basis for their claim of class-wide discrimination, and that there are similarly situated class members who desire to join the lawsuit."  *Gutescu*, 2003 WL 25586749, at *4.  "While it is clear that, at this stage, Plaintiffs' burden is not heavy, it is not invisible." *Brooks v. A Rainaldi Plumbing Inc.,* No. 6:06-cv-631, 2006 WL 3544737, *2 (M.D. Fla. Dec. 8, 2006).  Ultimately, the court must determine "whether, based upon the particular facts of the case, the similarities among the putative class members are sufficient so that it is more practical, efficient and fair . . . to proceed as a collective action rather than requiring separate actions to be maintained."  *Gutescu*, 2003 WL 25586749, at *4.  Here, because Plaintiffs fail to show the existence of similarly situated employees who desire to join this action and because Plaintiffs fail to demonstrate that they are similarly situated to the class they seek to represent, Plaintiffs cannot meet their burden at the notice stage.  Accordingly, Plaintiffs' Motion should be denied.

**I.**   **Plaintiffs Fail to Demonstrate The Existence of A Common Unlawful Policy or Plan.**

In this type of case, the similarly situated analysis typically focuses on whether there is a common unlawful policy or plan that binds the putative class together.  *See Williams v. Accredited Home Lenders, Inc.*, No. 1:05-cv-1681-TWT, 2006 U.S. Dist. LEXIS 50653, at * 3 (N.D. Ga. July

25, 2006) (noting that plaintiffs must provide "substantial allegations that the putative class members were together the victims of a single decision, policy, or plan."). Plaintiffs fail to demonstrate that they were the victims of a common policy or practice that violated their rights under the FLSA.

Instead, Plaintiffs leap from one unsupported conclusion to another and contend –without any basis—that "[TSC] has a uniform policy of failing to pay overtime to any of its house cleaners when they work[ed] in excess of forty hours per week." (ECF Nos. 18, 19, 20, and 26.)  Plaintiffs submit their own declarations as purported "evidence" of TSC's policies or practices.  Such declarations, however, are carbon copies of each other and have very little probative value.  Aside from the declarant's name and duration of employment, the declarations are completely identical. (*Id.*)  And the declarations are wholly devoid of any information to establish that Plaintiffs had personal knowledge of TSC's nation-wide compensation practices.  (*Id.*)  Indeed, Plaintiffs' statements fail to establish any factual basis for their claims that other GRAs were not paid overtime work.  (*Id.*)  As with other courts in this jurisdiction, this Court should decline to consider such boilerplate and cookie cutter declarations in considering Plaintiffs' Motion. *See*, *e.g.*, *Manzi v. Harman & Tyner, Inc.,* No. 11-60426-CIV, 2011 WL 2672343, at *2-3 (S.D. Fla. July 8, 2011) (denying     motion     for conditional certification in     part     because     plaintiffs' identical affidavits lacked sufficient detail); *Holmes v. Quest Diagnostics, Inc.*, No. 11-80567-CIV, 2012 WL 12876965, at *2 (S.D. Fla. June 14, 2012) (finding that plaintiffs' declarations had no "probative value" because they were boilerplate and cookie cutter declarations that were entirely devoid of particularity).

Putting aside Plaintiffs' cookie-cutter declarations, there is no evidence that TSC has a nationwide common policy or practice that violated the FLSA.  TSC's compensation decisions are

client-specific and differ from property to property.  TSC does not have an uniform policy that requires GRAs to be compensated on a piece rate basis.  Nor does TSC maintain a widespread policy that requires GRAs to be paid in the same manner as Plaintiffs.  Indeed, Plaintiffs themselves were not even paid in a similar manner; Mijares regularly received both piece rate and hourly pay while the remaining Plaintiffs generally received only piece rate. Additionally, all four Plaintiffs worked at one TSC property – the Grove – and only during the time that a portion of the GRAs at the Grove received piece rate, further limiting the probative value of their declarations. Only first shift GRAs received piece rate; second shift GRAs always received hourly pay.  These undisputed facts undermine Plaintiffs' claims and demonstrate that their claims of an alleged unlawful common practice or policy are based solely on speculation.

This lack of evidentiary support is fatal to Plaintiffs' request for conditional certification and thus the Motion should be denied.  *See M.H. Fox v. Tyson Foods, Inc.*, 519 F.3d 1298, 1302 (11th Cir. 2008) (affirming the district court's denial of the plaintiffs' motion for collective action where district court found that the defendant did not have a single, company-wide policy that violated the FLSA); *Gonzales v. Hair Club for Men, Ltd., Inc.*, No. 6:06-cv-1762-Orl-28-JGG, 2007 WL 1079291, at *3 (M.D. Fla. Apr. 9, 2007) (declining to conditionally certify a company-wide class of stylists because the plaintiffs failed to show that the alleged FLSA violations stemmed from a company-wide policy or practice); *Rappaport v. Embarq Mgmt. Co.*, No. 6:07-cv-468-Orl-19-DAB, 2007 WL 4482581, *4 (M.D. Fla. Dec. 18, 2007) (denying conditional certification in the absence of evidence that defendants denied overtime compensation on a "company-wide scale.").

**II.    Plaintiffs Fail To Demonstrate That Other Similarly Situated Employees Desire to Participate In This Litigation.**

It is well established in the Eleventh Circuit that, at the notice stage, plaintiffs bear the burden of proving that other similarly situated employees desire to opt into the proposed class. *See Dybach v. Fla. Dep't of Corrections*, 942 F.2d 1562, 1567-68 (11th Cir. 1991). In other words, "[plaintiffs have] the burden of demonstrating a reasonable basis for crediting the assertion that aggrieved individuals exist in the class [they] propose[]." *Horne v. United Servs. Auto. Ass'n*, 279 F. Supp. 2d 1231, 1234-35 (M.D. Ala. 2003); *Mackenzie v. Kindred Hosps. East, LLC*, 276 F. Supp. 2d 1211, 1221 (M.D. Fla. 2003) (noting that "a showing that others desire to opt-in must be made before notice is authorized."). In determining whether a plaintiff has satisfied this burden, there is no fixed rule for how many putative class members must demonstrate interest. Rather, like the similarly situated requirement, the requisite showing depends upon the size and geographic dispersion of the putative class as well as the nature of the claims asserted. *Delano v. MasTec, Inc.*, No. 8:10-cv-320, 2011 U.S. Dist. LEXIS 59228, at *20-21 (M.D. Fla. June 1, 2011); *Rodgers v. CVS Pharm., Inc.*, No. 8:05-cv-770, 2006 U.S. Dist. LEXIS 23272, at *18 (M.D. Fla. Mar. 22, 2006). Here, Plaintiffs fail to satisfy this initial burden.

This Court's decision in *Monserrate v. Hartford Fire Ins. Co.*, No. 6:14-CV-149-ORL, 2015 WL 4068388, at *2-3 (M.D. Fla. July 2, 2015) (Dalton, Jr., Roy) is instructive. There, this Court found that the plaintiffs did not meet their threshold burden of demonstrating a national interest in the action. (*See id.*) In doing so, this Court reasoned that the plaintiffs failed to demonstrate a nationwide interest because "they have not provided any affidavits, consents to join, or other evidence from any non-named employee who worked outside of [d]efendant's Maitland or Lake Mary offices—let alone outside of the state of Florida[.]" (*Id.*) This Court ultimately found that nationwide collective action was not appropriate for the case. (*Id.*) Similarly, in *Branch*

*v. Amtec, LLC*, No. 09-82389-CIV, 2010 WL 11601107, *6 (S.D. Fla. Nov. 24, 2010), the court found that the plaintiffs failed to meet their burden of demonstrating that nation-wide certification was warranted because the plaintiffs "failed to demonstrate the existence of similarly situated employees outside of Maryland that desired to join the current litigation."  The same analysis applies here.

Plaintiffs have only managed to demonstrate their own interest, and not nationwide interest, in participating in this litigation based on their work at the Grove and only during the short time period that some of the GRAs at the Grove worked on a piece rate system.  Plaintiffs have not filed any affidavits, consents to join, or any other evidence from any non-named employee who worked at the Grove or outside of the Grove or under a different pay structure.  (*See generally* Dkt.) None of Plaintiffs' declarations state that they worked at any of TSC's other locations, that they know any GRAs who worked or currently work at TSC's other locations, or that they have personal knowledge that GRAs at TSC's other locations want to join this action.  (*See* ECF Nos. 18, 19, 20, and 26.)  Indeed, Plaintiffs all worked for TSC for less than 10 months—Mijares only 6 months— and would not know TSC's pay structures at any other location, nor any other individuals at TSC's other locations who want to join this action.

Plaintiffs' naked assertions are based merely on speculation and contain no probative evidence that other GRAs, *anywhere,* wish to join this action.  *See Delano v. MasTec, Inc.*, No. 8:10-cv-320-T-27MAP, 2011 WL 2173864, at *5 (M.D. Fla. June 2, 2011) ("A plaintiff's or counsel's belief of other employees who desire to opt in and unsupported expectations that additional plaintiffs will subsequently come forward are insufficient to justify certification of a collective action and notice to a potential class."); *Palacios v. Boehringer Ingelheim Pharm., Inc.*, No. 10-22398-CIV-UU, 2011 WL 6794438, at *6 (S.D. Fla. Apr. 19, 2011) ("[A] plaintiff's or

counsel's belief in the existence of other employees who may desire to opt-in is insufficient to justify notice to a potential class. In addition, unsupported expectations that additional plaintiffs will subsequently come forward are insufficient to justify notice.") (citations omitted). Accordingly, Plaintiffs have not met their initial burden to show sufficient interest in the litigation to warrant certification of a nation-wide collective action and thus their Motion should be denied.

**III. Plaintiffs Cannot, Even Conditionally, Establish That They Are Similarly Situated To The Class of Individuals Whom They Seek To Represent.**

To establish similarity, Plaintiffs must demonstrate that they are similarly situated to the putative class. Like the other requirements, Plaintiffs fail to carry their burden.

**1. Plaintiffs Fail To Show That They Are Similarly Situated To The Putative Class.**

Plaintiffs bear the burden of showing that they are similar to the members of the putative class. *Grayson v. K-Mart Corp.*, 79 F.3d 1086, 1097 (11th Cir. 1996) (recognizing that the burden of establishing the similarly situated requirement rests squarely with plaintiff at all times); *Becker v. Southern Soils Turf Management, Inc.*, No. 6:06-cv-22-Orl-28JGG, 2006 WL 3359687, at *2 (M.D. Fla. Nov. 20, 2006) ("The plaintiff thus bears the burden of demonstrating that the other employees are 'similarly situated.'").

> The factors to be considered in determining whether the putative opt-in Plaintiffs are similarly situated include: 1) whether the plaintiffs all held the same job title; 2) whether they worked in the same geographical location; 3) whether the alleged violations occurred during the same time period; 4) whether the plaintiffs where subjected to the same policies and practices, and whether these policies and practices were established in the same manner and by the same decision-maker; and 5) the extent to which the actions which constitute the violations claimed by [p]laintiffs are similar.

*Gutescu v. Carey Int'l, Inc.*, No. 01-4026-CIV-MARTINEZ, 2003 WL 25586749, *4 (S.D. Fla. July 21, 2003). "Ultimately, the court must determine whether, based upon the particular facts of the case, the similarities among the putative class members are sufficient so that it is more practical,

efficient and fair . . . to proceed as a collective action rather than requiring separate actions to be maintained." (*Id.*) "Otherwise, 'it is doubtful that § 216(b) would further the interests of judicial economy, and it would undoubtedly present a ready opportunity for abuse.'" *Anderson v. Cagle's, Inc.*, 488 F.3d 945, 953 (11th Cir. 2007).

Here, Plaintiffs cannot establish the existence of similar compensation practices among the putative class. Plaintiffs define the purported putative class as follows: "[a]ll house cleaners who worked for Defendant within the last three years who believe they were not paid proper overtime wage compensation during any workweek of their employment within the applicable statute of limitation period." (ECF No. 17 at 2.) The purported putative class broadly encompasses *all* current or former GRAs of TSC regardless of geographical location, regardless of the 10-month or less time period worked by Plaintiffs, and regardless whether they were paid in the same manner as Plaintiff. Plaintiffs have not offered a single shred of evidence to buttress their allegations that all putative class members were victims of a common policy, plan, or practice that allegedly violated the FLSA. (*See supra*, Sec. I.) Indeed, Plaintiffs' cookie cutter declarations are completely devoid of any references to TSC's compensation practices or policies outside of the location where Plaintiffs worked. (*See supra*, Sec. II.) Accordingly, Plaintiffs have failed to present any evidence that they were similarly situated to the putative class.

Moreover, no evidence of a uniform compensation practice exists. TSC's compensation decisions are client-specific and differ from property to property. TSC has compensated its GRAs in a number of different manners, according to their job duties, scheduled shifts, level of experience, and property. Significantly, every property is different and every client has different cleaning standards. For example, at the Grove, GRAs who generally started their shifts at either 8 a.m., 9 a.m., and 10 a.m. ("first shift") were paid under the piece rate system for only a limited

period of time.  However, at the same property, GRAs who worked a shift beginning after 3 pm ("second shift") were always paid on an hourly basis.

Simply put, not only is there no evidence of a uniform compensation practice that exists that caused improper overtime wage compensation, but the varying compensation structures among the putative class at the Grove render collective action litigation unmanageable here because of the need to conduct individualized inquires of each GRA.[1]  *See, e.g, Calvo v. Summit Broadband Inc.*, No. 216-CV-746-FTM-38MRM, 2018 WL 3635104, at *12 (M.D. Fla. Apr. 17, 2018) (finding collective action treatment not warranted because the different compensation structures would task the court with analyzing "plaintiff-specific inquiries."); *Zipp v. World Mortg. Co.*, No. 6:08-CV1638-ORL-28KRS, 2010 WL 11628574, at *7 (finding that the plaintiffs failed to demonstrate that they were similarly situated to the putative class because each of defendant's offices had different rules and structures and the employees functioned under different pay structures); *Brooks v. A Rainaldi Plumbing, Inc.*, No. 6:06-cv-631-ORL-31DAB, 2006 WL 3544737, at *2 (M.D. Fla. Dec. 6, 2006) (finding that collective action treatment was inappropriate because the defendant had different pay structures for its employees); *Becker v. Soils*, No. 6:06-cv-22-ORL-28JGG, 2006 WL 3359687, at *3 (M.D. Fla. Nov. 20, 2006) (denying motion for

---

[1]     *See, e.g, Calvo v. Summit Broadband Inc.*, No. 216-CV-746-FTM-38MRM, 2018 WL 3635104, at *12 (M.D. Fla. Apr. 17, 2018) (finding collective action treatment not warranted because the different compensation structures would task the court with analyzing "plaintiff-specific inquiries."); *Zipp v. World Mortg. Co.*, No. 6:08-CV1638-ORL-28KRS, 2010 WL 11628574, at *7 (M.D. Fla. Sept. 10, 2010) (finding that the plaintiffs failed to demonstrate that they were similarly situated to the putative class because each of defendant's offices had different rules and structures and the employees functioned under different pay structures); *Mason v. Atlanta Beverage Co.*, No. 1:17-CV-2293-TWT, 2018 WL 3655374, at *4 (N.D. Ga. Aug. 2, 2018) (finding that the proposed class should be narrowed to include only employees who were "paid in a similar manner."); *Wallace v. Norcross Assocs., LLC*, No. 1:13-CV-1349-RWS, 2014 WL 1373659, at *3-4 (N.D. Ga. Apr. 8, 2014) (finding that the plaintiffs' different compensation schemes required a highly individualized analysis not suited for collective action).

condition certification where there was evidence that employees did not have similar pay provisions).

What is more, Plaintiffs cannot even demonstrate that they are similarly situated to each other. The primary reason for this is differences in their compensation arrangements. At the Grove, GRAs' compensation depended on their job duties and scheduled shifts. GRAs who worked on the first shift received piece rate pay while GRAs who worked on the second shift received hourly pay. Mijares is not similarly situated to the other named Plaintiffs because he worked on the first and second shifts and repeatedly received piece rate and hourly pay – the most of any named Plaintiffs. These facts clearly distinguish Mijares from the remaining Plaintiffs and provide additional support that the resolution of Plaintiffs' claims would require a highly individualized analysis of each member of the putative class, and is, therefore, not suited for collective action.

### 2. Plaintiffs' Purported Overtime Claims Require Individualized Inquiries.

Plaintiffs also make the unsupported allegation that they were not compensated for "off-the-clock" work. (*See generally* ECF Nos. 23, 27, 28, and 31.) Mijares alleges that TSC did not compensate him "for non-production based work such as attending meetings and stripping[.]" (ECF No. 31 at 2.) Bencomo alleges that TSC did not pay him for "non-commissioned work such as attending meetings and stripping (linens)." (ECF No. 23 at 2.) In contrast, Godoy alleges simply and nonspecifically that TSC did not compensate her "for work that was not production based." (ECF No. 27 at 2.) Similarly, Dionicio alleges that TSC did not pay her "for meetings and other noncommissioned work." (ECF No. 28 at 2.)

However, TSC denies that Plaintiffs performed off-the-clock work, or that such "preliminary" or "postliminary" activities, performed before or after the employee's principal

activities for the workday, must be included or excluded in computing time worked, and further denies that it had any actual or constructive knowledge of any such purported violations. TSC's defense to Plaintiffs' purported off-the-clock claims requires an analysis of each individual Plaintiff's day-to-day activities, including each Plaintiff's awareness of TSC's timekeeping policy, his or her violation of that policy, and whether TSC's management had actual or constructive knowledge of the off-the-clock work. Because this analysis requires an individualized inquiry, collective treatment is not appropriate in this case. *See Chalker v. Burlington Coat Factory of Fla., LLC*, No. 8:12-cv-2755-T-23TBM, 2013 WL 5954783, at * 2-3 (M.D. Fla. Nov. 7, 2013) ("Plaintiff-specific inquiries would be required as to numerous issues including, *inter alia*, whether plaintiffs actually worked 'off-the-clock,' whether plaintiffs modified their time records to reflect the actual time worked [and] whether plaintiffs' supervisors were aware of any 'off-the-clock work[.]"); *Cartner v. Hewitt Associates LLC*, No. 6:09-cv-1293-Orl-31DAB, 2010 WL 1380037, at * 3 (M.D. Fla. Mar. 31, 2010) (finding that collective treatment was not appropriate because there were "individualized inquiries" needed to be made on a plaintiff-by-plaintiff basis). Accordingly, Plaintiffs' Motion should be denied.[2]

---

[2]     Notably absent from Plaintiffs' Motion is any assertion or probative evidence that certifying a proposed nation-wide class of house cleaners would further the interests of judicial economy. As the case law provides, judicial economy is at the very foundation of collective actions. *See Saxton v. Title Max of Alabama,* 431 F.Supp.2d 1185, 1189 (N.D. Ala. 2006) (finding collective treatment is not appropriate because, among other reasons, deviations from overtime policy are highly case specific and subject to a variety of variables runs directly counter to "the economy of scale envisioned by" collective treatment of substantially similar employees under § 216(b) of the FLSA.); *Cohen v. Allied Steel Bldgs, Inc.* 554 F.Supp.2d 1331, 1334 (S.D. Fla. 2008) (denying motion for collective action where plaintiff failed to show, among other things, how other employees joining action would serve the interest of judicial economy); *Cartner* 2010 WL 1380037, at * 3 (denying certification and stating that individualized inquiries are required on a plaintiff-by-plaintiff basis for differences in the manner in which a given team's employees start and end their shifts, take breaks, and handle client calls, etc.).

**IV.     This Court Should Decline To Approve Plaintiffs' Proposed Notice and Decline To Authorize Discovery.**

Notice to potential class members is only appropriate if Plaintiffs demonstrate that members of a potential class exist and are similarly situated.  Because Plaintiffs fail to meet their burden, their request for discovery and approval of notice is moot.  But even if this Court decides that collective treatment is appropriate in this case, Plaintiffs' proposed notice and requested discovery must be revised.

**1.     Plaintiffs Have Not Provided Evidence Of Any Willful Violation Requiring Notice For A Three-Year Limitations Period.**

TSC maintains that Plaintiffs' action should not be conditionally certified as a collective action.  However, if this Court conditionally certifies a putative class, the limitations period should be two years because Plaintiffs have failed to provide any factual basis for a willful violation.

There is a two-year statute of limitations for actions arising under FLSA action.  29 U.S.C. § 255(a).  However, if the plaintiff proves that a "willful" violation occurred, the limitations period is extended to three years.  *See id.*  "Willful" violations are those that the employer "knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute[.]" *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988).  Here, the limitations period should be two years because Plaintiffs have not sufficiently alleged any facts supporting that TSC knew or showed reckless disregard for their allegations that they failed to receive overtime compensation.  Accordingly, because Plaintiffs' allegations that TSC's alleged FLSA violations were willful are completely devoid of any factual basis, the notice period should be limited to two years preceding the Court's ruling on Plaintiffs' Motion.

### 2.   Posting Plaintiffs' Proposed Notice Is Premature And Inappropriate.[3]

Plaintiffs' request that the proposed notice be placed at TSC's place of business is premature and inappropriate.  The posting of the proposed notice at TSC's place of business would only generally be permitted if TSC fails to provide an adequate list of names to Plaintiffs or has otherwise failed to cooperate in the litigation.  *See Harris v. Performance Transportation, LLC,* No. 8:14-cv-2913-T-23EAJ, 2015 WL 1257404, at * 5 (M.D. Fla. Mar. 18, 2015) ("Generally, posting the notice at a defendant's business is permitted when a defendant provides an inadequate list of names to the plaintiff or has otherwise failed to cooperate in the litigation."); *Gonzalez v. TZ Ins. Solutions, LLC*, No. 8:13-cv-2098-T-33EAJ, 2014 WL 1248154, at * 6 (M.D. Fla. Mar. 2014) ("The Court notes that other courts have required that Class Notice be posted at the workplace only after a showing that a defendant has failed to cooperate in the collective action process.").  No such circumstances exist in this case.  Accordingly, this Court should deny Plaintiffs' request.

### 3.   A Follow-up Notice Is Premature And Prejudicial.

Plaintiffs also request that they be allowed to send a "follow-up" notice "to the remaining class members on the fourteenth day prior to the close of the Court-ordered Notice Period."  (ECF No. 17 at 9.)  Plaintiffs' request, however, is premature and unduly prejudicial because Plaintiffs fail to demonstrate that the circumstances warrant such a reminder.  As explained by this Court in *Harris,* 2015 WL 1257404, at * 5, "it is unnecessary, and arguably inappropriate, for Plaintiffs' counsel to send follow-up emails or a second mailing without seeking relief from the Court and

---

[3]     While Plaintiffs' Motion references Plaintiffs' proposed "mail and e-mail" notices and "follow up" notices, none of these purported notices were attached to Plaintiffs' Motion.  (*See generally* Dkt.)  To date, Plaintiffs have not filed any such notices with this Court.  (*See id.*)  Accordingly, TSC is currently unable to assess the proposed notices on the merits.

demonstrating that [the] circumstances warrant such additional action." *See also Palma v. Metropcs Wireless, Inc.*, No. 8:13–cv–698, 2014 WL 235478, at *3 (M.D. Fla. Jan. 22, 2014*)* ("Sending a putative class member notice of this action is informative; sending them a 'reminder' is redundant."). The same reasoning applies here. No such circumstances exist here to warrant such a "follow-up" notice to class members. Accordingly, Plaintiffs' request should be denied.

### 3. The Class Definition Should Be Narrowly Tailored.

As stated above, the Plaintiffs define the purported putative class as follows: "[a]ll house cleaners who worked for Defendant within the last three years who believe they were not paid proper overtime wage compensation during any workweek of their employment within the applicable statute of limitation period." (ECF No. 17 at 2.) The purported putative class broadly encompasses all current or former GRAs of TSC regardless of whether they were paid in the same manner as Plaintiffs. Should the court grant the Motion, the proposed class definition should instead be narrowly tailored as follows:

> [a]ll house cleaners who worked for Defendant at the Grove Resort and Spa, located at 14501 Grove Resort Avenue, Orlando, Florida 34787, between March 2017 and August 2018 and received piece rate and who believe they were not paid proper overtime wage compensation during any workweek of their employment during the period.

### 4. Plaintiffs' Requested Discovery Is Overbroad and Improper.

Plaintiffs' Motion also proposes that TSC provide the full name, last known addresses, telephone numbers, and personal e-mail addresses of any current or former GRAs in searchable electronic format within fourteen (14) days of entry of the Court's Order. (ECF No. 17 at 11.) Plaintiffs, however, have not provided a basis or need for such information in such a short period. First and foremost, Plaintiffs' request discovery is improper because Plaintiffs fail to make the

requisite showing that similarly situated class members exist and therefore class-wide discovery is not warranted in this case.  Moreover, TSC does not have the resources to provide full, complete, and accurate information  on a nation-wide basis as requested in fourteen (14) days from the entry of the Court's Order and such a request is unduly burdensome.  To the extent that this Court allows Plaintiffs to engage in class-wide discovery, TSC respectfully requests that discovery be limited to GRAs who were paid on a piece-pay basis and worked for TSC at the Grove.  Additionally, TSC respectfully requests that this Court provide TSC with thirty (30) to comply with any such Order.

## CONCLUSION

For the foregoing reasons, Defendant The Service Companies, Inc. respectfully requests that this Court deny Plaintiffs' Motion for Conditional Certification and Court-Authorized Notice Pursuant to 29 U.S.C. § 216(b) and allow Plaintiffs to proceed on an individual basis only.

Dated:  March 20, 2019

Respectfully submitted,

**HOLLAND & KNIGHT LLP**

/s/ Erika R. Royal
Erika R. Royal
Florida Bar No. 154385
515 East Las Olas Boulevard, Suite 1200
Fort Lauderdale, FL 33301
Phone: (954) 525-1000
Fax: (954) 463-2030
Email:   erika.royal@hklaw.com

Luis J. Gonzalez, Esq.
Florida Bar No. 055881
HOLLAND & KNIGHT LLP
200 S. Orange Avenue, Ste 2600
Orlando, FL 32802-1526
Telephone: (407) 425-8500
Email: luis.gonzalez@hklaw.com

*Attorneys for Defendant,*
*The Service Companies, Inc.*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on March 20, 2019, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to the following attorney of record:

Luis A. Cabassa, Esq.
Wenzel Fenton Cabassa, P.A.
1110 N. Florida Avenue, Suite 300
Tampa, FL 33602
Email: lcabassa@wfclaw.com
twells@wfclaw.com
*Attorneys for Plaintiffs*

/s/Erika R. Royal
Erika R. Royal
Florida Bar No. 154385
erika.royal@hklaw.com